UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THE MATCO GROUP, INC., EAGLE
ENTERTAINMENT GROUP, INC., SOUND
MEMBERS, LLC, and ECO INTERNATIONAL,
INC.,

                                                                **Plaintiffs,**

    v.                                                                           3:14-CV-402

HARTFORD FIRE INSURANCE COMPANY,
AS PART OF HARTFORD FINANCIAL SERVICES
GROUP, INC.,

                                                                **Defendant.**
_____

## DECISION & ORDER

Thomas J. McAvoy, Senior District Judge.

Before the Court is Defendant's Motion for Summary Judgment, dkt. # 13, in this declaratory-judgment action concerning a dispute over insurance coverage. The parties have briefed the issues.

### I.    BACKGROUND

Defendant Hartford Fire Insurance Company ("Defendant") issued an insurance policy, number 01 UUN IE 5372, effective September 1, 2010 to September 1, 2011, to Plaintiffs The Matco Group, Inc., Eagle Entertainment Group, Inc., Sound Members, LLC, and ECO International, LLC ("Plaintiffs"). (Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment, dkt. # 13-2

("Defendant's Statement") at ¶ 1.[1] The insurance policy covered property located at 899 Assembly Place, Hallstead, Pennsylvania. (Id. at ¶¶ 1,3). That location reportedly once housed a manufacturing facility, but at all relevant times served as a warehouse. (Id. at ¶ 2).

The insurance policy in question contains a provision which reads, in pertinent part:

**PROPERTY CHOICE CONDITIONS AND DEFINITIONS**

**A. GENERAL CONDITIONS**

**12. Legal Action Against Us.**

No one may bring a legal action against us under this Coverage Part unless:

    a. There has been full compliance with all of the terms of this Coverage Part; and
    b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Id. at ¶ 4). Plaintiffs dispute that this particular provision applied to the loss here in question. (Plaintiffs' Response to Defendant's Statement of Material Facts, dkt. # 14-4 ("Plaintiffs' Response") at ¶ 4).

Plaintiffs reportedly suffered losses due to theft at the insured locations in March and August 2011. (Defendant's Statement at ¶ 5). The alleged theft included wiring and piping from the building's plumbing, HVAC and electrical systems. (Id.). Plaintiffs did not initially report these thefts to Defendant, their insurer. (Id. at ¶ 6). Instead,

---

[1] Both parties filed the statements of undisputed material facts as required by Local Rule 7.1. The Court will cite to the Defendant's Statement for facts which are undisputed. The Court will otherwise note where factual disputes exist.

Plaintiffs retained Louis Picciano & Sons, Inc., Air Temp Heating & Condition, Inc., and Matco Electric Corporation to assess the impact of the alleged theft and prepare estimates of damage. (Id.). Plaintiffs made a claim to their insurance agent on March 27, 2012, nearly a year after the first loss. (Id. at ¶ 7). The Property Loss Notice Plaintiffs sent Defendant contained a "Description of Loss & Damage" that claimed Plaintiffs sustained "theft of piping and wiring in the spring of 2011 and August of 2011. (Id. at ¶ 8). The Notice described Plaintiffs' losses as "Break in and theft of the building systems, much of the wiring and piping has been either damaged or stolen. First noticed minor break-ins in the spring of 2011 and had found major theft of piping and wiring in August 2011." (Id. at ¶ 9). Defendant assigned two claim numbers: Claim No. CP0010592950 for the loss that occurred on April 1, 2011, and Claim No. CP001592986 for the loss that occurred on August 1, 2011. (Id. at ¶ 10).

Defendant issued reservation of rights letters with respect to each of the claims. (Id. at ¶ 11). In those letters, Defendant advised Plaintiffs of their notification and cooperation obligations under the Policy, fully reserved the Defendant's rights under the Policy, and stated that "[a]nything done by [Hartford] in connection with the above-referenced claim, including an investigation into the cause, damages or any other matters related thereto, shall not waive, modify, invalidate or forfeit any rights of the Hartford." (Id. at ¶ 12).

Defendant then began investigating Plaintiffs' claims. (Id. at ¶ 13). Defendant contacted Plaintiffs to inquire about the cause and extent of the losses and retained a building consultant to assist in evaluating the scope of the claimed damage and associated restoration costs. (Id.). The parties agree that Defendant inspected the

3

building site, but disagree about how many inspections occurred and the dates on which any inspections took place. (Id. at ¶ 14; Plaintiffs' Response at ¶ 14). Defendant contends that it contacted the local building inspector and Plaintiffs' utility company, but Plaintiffs contend that Defendant has not provided any proof of this activity. (Defendant's Statement at ¶ 15; Plaintiffs' Response at ¶ 15). During the course of the investigation, Defendant frequently updated Plaintiffs about the status of the claims. (Defendant's Statement at ¶ 16).

Defendant notified Plaintiffs by letters on July 1, 2013 that Defendant's investigation had concluded, and that the investigation had revealed that the insured location had flooded twice; in June 2006 and August 2011. (Id. at ¶ 17). Plaintiffs contend that these letters acknowledged coverage, but applied improper deductibles. (Plaintiffs' Response at ¶ 17). Plaintiffs also allege that the Defendant's valuation of Plaintiffs' loss was incorrect and based on bad information. (Id.).

Defendant's letters of July 1, 2013 stated that the investigation had revealed that electrical power to the insured premises was terminated by the local utility following the 2006 flood, and that the local utility and building inspector indicated that the electrical system had never been repaired, re-inspected or re-energized. (Defendant's Statement at ¶ 18). Moreover, these letters also indicated that the local building inspector reported that the flood waters exceeded the height of the electrical system and transformers, as well as the HVAC condensors and air handlers. (Id. at ¶ 19). Plaintiffs again contend that these letters acknowledged coverage, but applied improper deductibles. (Plaintiffs' Response at ¶¶ 18-19). Plaintiffs also allege that the Defendant's valuation of Plaintiffs' loss was incorrect and based on bad information. (Id.).

4

The letters on July 1, 2013 further informed Plaintiffs that the prior flooding events at the insured premises and the Policy's Flood, Water Under Ground exclusion served to bar coverage for any items previously damaged by flooding, including the Plaintiffs' claimed electrical and HVAC damage. (Id. at ¶ 20). Plaintiffs likewise contend that these letters acknowledged coverage, but applied improper deductibles. (Plaintiffs' Response at ¶ 20). Plaintiffs also allege that the Defendant's valuation of Plaintiffs' loss was incorrect and based on bad information. (Id.).

The July 1, 2013 letters also informed Plaintiffs that the theft of plumbing items was covered under the policies. (Defendant's Statement at ¶ 21). The loss, however, as estimated by Defendant's consultants, did not exceed the policy's deductible when divided between the two claims. (Id.). In addition, the estimates provided by Defendant's consultants and the consultants employed by Plaintiffs had "significant" differences. (Id. at ¶ 22). When Defendant's representatives attempted to contact Plaintiffs' consultants to resolve these differences, Plaintiffs' representatives did not respond. (Id.). Plaintiffs, as with Defendant's other allegations, contend that these letters acknowledged coverage, but applied improper deductibles. (Plaintiffs' Response at ¶¶ 22-23). Plaintiffs also allege that the Defendant's valuation of Plaintiffs' loss was incorrect and based on bad information. (Id. ¶¶ 22-23).

Defendant's July 1, 2013 letters concluded by stating:

> In stating the above reasons for declining coverage to replace the electrical and HVAC items the Hartford Fire Insurance Co does not intend to waive any of the terms, conditions, exclusions, endorsements or limitations of the captioned policy or any of our rights and defenses under the policy or at law; those rights being hereby specifically reserved.

(Defendant's Statement at ¶ 23). Plaintiffs respond to this allegation with the same

recitation used to respond to Defendant's earlier allegations about the content of the letters. (Plaintiffs' Response at ¶ 23).

On or about July 3, 2013, Defendant received a fax from Alan J. Pope, Esq., containing a letter dated June 17, 2013. (Defendants' Statement at ¶ 23).[2] The letter dated June 17 indicated that Plaintiffs had retained Pope as their attorney and requested a timetable for completion of Hartford's investigation of the claims. (Id. at ¶ 24). Pope wrote to Defendant on July 26, 2013 regarding Defendant's denial of coverage. (Id. at ¶ 25). Pope disputed the conclusions of Defendant's investigation, denying that electrical power had not been restored or that the 2006 flood waters had submerged the electrical system, transformers, HVAC condensers and air handlers. (Id. at ¶ 26). In a series of letters exchanged between the parties in October and November 2013 and February 2014, Attorney Pope continued to challenge Defendant's coverage position and sought to provide additional claim documentation. (Id. at ¶ 27). Defendant reiterated its findings in letters mailed in August, October and December 2013. (Id. at ¶ 28). Each of those letters stated:

> [P]lease understand that while we are willing to review any additional documents that you may have in support of your statements we are standing by our previous correspondence regarding these two claims in that they are not covered for the reasons set forth in those letters.
>
> As such, you should not construe any settlements or actions by Hartford Fire Insurance Company or its representatives to constitute a waiver of any rights under the policy of insurance, unless such a specific waiver is communicated to you in writing through Hartford Fire Insurance Co.

---

[2]Defendant's Statement contains two consecutive paragraphs both labeled paragraph 23. The paragraph cited here is the second of those paragraphs. The Court will not renumber the paragraphs and follow the Defendant's numbering. Plaintiffs follow this practice in responding to the Defendant's Statement.

6

(Id. at ¶ 29). Hartford wrote Attorney Pope on March 3, 2014 to reiterate this position. (Id. at ¶ 30). Plaintiffs responded by filing the instant action. (Id. at ¶ 31).

Plaintiff's filed a Complaint in the Supreme Court of Broome County, New York on March 6, 2014. See dkt. # 1-1. The Complaint alleges a breach of the insurance contract and contains two counts. Plaintiffs seek a declaratory judgment that: (1) Defendant is precluded from asserting any policy exclusions not contained in its March 27, 2012 reservation of rights letters; (2) none of the other exclusions asserted by the Defendant are applicable to the Plaintiffs' covered losses; and (3) Defendant must pay for all Plaintiffs' costs and expenses arising from the action. Defendant removed the case to this Court on April 9, 2014. See dkt. # 1. Defendant then filed an answer. See dkt. # 4. Among the affirmative defenses asserted by the Defendant was an allegation that "Plaintiffs' claims are barred in whole or part by the '**LEGAL ACTION AGAINST US**' provision contained in the policy." Id. Defendant filed the instant motion on December 17, 2014. See dkt. # 13. The parties have briefed the issue, bringing the case to its present posture.

**II.    Legal Standard**

Defendant has moved for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable

jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III. ANALYSIS

This case involves interpretation on an insurance contract. The parties do not dispute that New York law applies. In New York, "an insurance policy is a contract that is construed to effectuate the intent of the parties as expressed by their words and purposes." Dicola v. American S.S. Owners Mut. Protection and Indem. Assoc., 158 F.3d 65, 77 (2d Cir. 1998). Courts resolving disputes "'over insurance coverage . . . first look to the language of the policy.'" Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co., 21 N.Y. 3d 139, 148, 991 N.E.2d 666, 671 (2013) (quoting

Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y. 2d 208, 222, 774 N.E. 2d 687 (2002)). In interpreting the policy, a court is to "'construe the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leave no provision without force and effect.'" Id. (quoting Consolidated Edison, 98 N.Y. 2d at 222)). "'Unambiguous terms are to be given their plain and ordinary meaning." Dicola, 158 F.3d at 77 (qouting State of New York v. Blank, 27 F.3d 783, 792 (2d Cir. 1994). Ambiguity exists when the policy "'is reasonably susceptible to more than one reading.'" Id. (quoting Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998)). The Court decides "as a matter of law" whether the policy is ambiguous. Id.

Defendant argues that the Plaintiffs' claims are barred by the "Legal Action Against Us" provision of the insurance contract. As explained above, that provision requires that Plaintiffs may not bring an action under the coverage in question unless: "a. There has been full compliance with all of the terms of this Coverage Part; and b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred." Since the injuries in question occurred in March and August 2011 and Plaintiffs did not bring suit until March of 2014, more than two years passed between Plaintiffs' injury and their legal action, and the claims are time-barred. Plaintiffs do not really dispute that the policy provision, if applicable, would bar their claims. They argue, however, that an endorsement in the policy not cited by the Defendant applies, and that this endorsement does not contain a two-year limitation. Moreover, Plaintiffs contend, Defendant violated the applicable policy endorsement and purposely delayed a disclaimer or denial of coverage. Instead, Plaintiffs assert,

9

Defendants appeared to accept that coverage applied and simply argued about the amount of coverage available. As such, the denial was ineffective and unreasonable and does not apply.

As a preliminary matter, the Court agrees with the Defendant that the "Legal Action Against Us" provision, if applicable, bars Plaintiffs' claims. Courts have noted that "[u]nder New York law, a party to a contract ordinarily has six years within which to file a suit for breach of contract." O & E Growers, Inc. v. Selective Ins. Co. of Am., No. 07cv160, 2008 U.S. Dist. LEXIS 37441 at * 13 (W.D.N.Y. May 7, 2008) (quoting N.Y.C.P.L.R. § 213(2)). Parties may agree to shorter limitations as long as such periods are "reasonable and in writing." Id. Courts have found insurance policies reasonable which establish "that the suit for coverage under the policy must be commenced within a certain time after the date on which the loss occurred (as opposed to the date . . . when coverage was denied, or some other accrual date.)" Id. at *13-14. The statute of limitations in insurance policy may be applied even if a Plaintiff contends to be unaware of that contractual language because "'an insured has an obligation to read his or her policy and is presumed to have consented to its terms[.]" Beekman Regent Condominium Assn. v. Greater N.Y. Mut. Ins. Co., 45 A.D.3d 311, 38, 39 (1st Dept. 2007) (quoting Katz v. American Mayflower Life Ins. Co. of N.Y., 14 AD3d 195, 198, 788 NYS2d 15 (2004)). A defendant is not required to inform Plaintiff of the limitations clause, and mere participation in settlement negotiations does not waive the statute of limitations. Id.

Likewise, actions by the insurance company in investigating and negotiating the claim do not necessarily estop the insurer from asserting a statute-of-limitations

10

defense. "Delay by the insurance carrier in completing its investigation of the claim does not excuse the plaintiff from timely commencing an action, since he or she is bound by the terms of the contract to either commence an action prior to the expiration of the limitations period or obtain a waiver or extension of such provision." Brown v. Royal Ins. Co. of Am., 210 A.D. 2d 279, 620 N.Y.S. 2d 399, 400 (2d Dept. 1994). "Evidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel." Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 968, 620 N.E.2d 512, 514 (1988). A "[w]aiver is an intentional relinquishment of a known right and should not be lightly presumed." Id.

Here, the evidence is clear that the provision in question required Plaintiffs to file suit within two years of the occurrence giving rise to the claim. The claims had clearly both accrued by August 2011, and Plaintiff did not file suit until March 2014, well-beyond the two years required by the policy. While there were clearly delays between notice of Plaintiffs' claim and Defendant's notice that the claim would not be covered, Plaintiffs certainly had knowledge of when their injury occurred and they must be presumed to have had knowledge of the policy provision requiring them to file suit within two years. Plaintiffs' claims that Defendant acknowledged some coverage is immaterial to the question of whether the claim here is time-barred. Plaintiffs never sought waiver of this provision during their discussions with the Defendant, and Defendant clearly sought to preserve the right to invoke the provision by disclaiming any waiver in communications with the Plaintiffs. The mere fact that there were ongoing communications about the existence and amount of coverage available does not

11

excuse the failure to file suit.  Plaintiffs have pointed only to disagreement between the parties, not fraud or other conduct that would undermine the statute-of-limitations defense.  A dispute about the amount of coverage available is still a coverage dispute, and the provision in question contains no restrictions concerning the subjects of lawsuits regarding coverage to which the two-year limit applies.  Thus, unless the provision is inapplicable, that provision applies and Plaintiffs' claim is time-barred.

Perhaps recognizing the weakness of any claim that Defendant's conduct somehow precludes a statute-of-limitations defense, Plaintiffs instead point to policy provisions which they claim apply and which eliminate the two-year limit on filing an action cited by Defendant.  As part of their moving papers, Plaintiffs submit an affidavit from Robert Lacey, Vice President of Harding-Brooks Associates, LLC, "the insurance agency that produced the Hartford Fire Insurance commercial insurance policy for the Plaintiffs . . . at issue in this litigation."  (Affidavit of Robert Lacey, dkt. #14-9, ("Lacey Affidavit") at ¶ 1).  Lacey states that the Hartford Fire Insurance Policy submitted with the Defendant's moving papers is not the entire policy.  (Id. at ¶ 3).  The property at question is in Pennsylvania, and specific endorsements were issued as part of the policy "that amended certain terms and conditions of the policy."  (Id. at ¶ 5).  According to Lacey, Defendant issued a Property Choice Endorsement Form PC 00 30 01 03 Building Coverage Form on the policy.  (Id. at ¶ 6).  This endorsement form, Lacey contends, modifies the Property Choice coverage cited by the Defendant.   The form alters the conditions of the original Property Choice form, providing that "Legal Action Against Us" clause is replaced by a clause that makes no mention of a two-year statute of limitations.  (Id. at ¶ 7).  As such, Lacey contends, the two-year limit disappears from

12

the insurance contract and "the normal statutory breach of contract limitation would apply. (Id. at ¶ 8).

Exhibit A to Lacey's Affidavit contains the endorsement in question. (See dkt. # 14-10). The endorsement contains a provision that lists "changes [which] are made to the Property Choice Conditions[.]" (Id. at ¶ E). Among those "changes" are changes to the "Legal Action Against Us" provision. (Id. at ¶ E(2)). That change provides that:

> The Legal Action Against Us General Condition is replaced by the following:
>
> No person or organization has a right under this Coverage Form:
>
> a. To join us as a party or otherwise bring us into a suit asking for damages from you; or
> b. To sue us on this Coverage Form unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against you obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

(Id. at ¶ E(5)(2)(a-b)). Plaintiffs are correct that this form does not contain any mention of a statute of limitations. If the form were applicable to the dispute here in question, Defendant's argument would be wrong and summary judgment inappropriate.

Unfortunately for the Plaintiffs, the plain language of the coverage form makes clear that the endorsement does not apply to the dispute in this case. The provision of the coverage form that alters the Property Choice portion of the larger insurance policy states specifically that "*For Coverage provided under this Coverage Form*, the following changes are made to the Property Choice Conditions[.]" (Id. at ¶ E) (emphasis added).

13

Thus, contrary to Plaintiffs' reading, the changes do not apply to the entire Property Choice coverage, but only to the parts of the Property Choice coverage to which the endorsement applies. There would be no reason to place conditions on the changes if the changes applied to the entire Property Choice coverage. Thus, for the elimination of the two-year limitation period to apply, the dispute at issue would have to be one covered by the endorsement the Plaintiffs cite. The endorsement in question is titled "Legal Liability–Building Coverage Form" The endorsement describes the relevant coverage available:

> We will pay up to the applicable Legal Liability–Building Limit of insurance stated in the Property Choice Declarations for those sums that you become legally obligated to pay as damages because of direct physical loss or direct physical damage, including loss of use, to Covered Building Property caused by accident and arising out of Covered Cause of Loss. We will have the right and duty to defend any suit seeking those damages

(Id. at ¶ A). The coverage protects not only against a judgment entered against the insured, but also provides for liabilities related to that judgment, such as interests and costs. (Id. at ¶ A(3)). Among the "changes" to the Property Choice form are requirements that the insured "see[s] to it that we receive prompt written notice of" any "claim or suit brought against the insured." (Id. at ¶ E(1)(b)). This endorsement clearly covers instances where the insured is sued by a third party claiming damages arising out of the insured location. The policy pays out when the insured becomes legally obligated to compensate a third party. An action by the insured against the Defendant would clearly arise out of the Defendant's actions regarding such third-party claims. Here, the action arises out of Defendant's handling of a first-party claim bought by Plaintiffs, not a claim against them. No facts indicate that Plaintiffs became legally

14

obligated to anyone during the policy period. Because the "Legal Liability" endorsement does not apply to the circumstances of this case, Plaintiffs' argument must fail and summary judgment is appropriate for the Defendant on this matter.[3]

IV. **CONCLUSION**

For the reasons stated above, the Court will GRANT the Defendant's motion for summary judgment, dkt. # 13.

IT IS SO ORDERED.

Dated: January 22 , 2015.

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[3] Because the Court has determined that summary judgment is appropriate for the Defendants, the Plaintiffs' arguments over the need for Defendant to conduct an appraisal of the property are moot.